

**ORDERED in the Southern District of Florida on October 14, 2010.**

*Paul G. Hyman, Chief Judge*
*United States Bankruptcy Court*

___

```
         UNITED STATES BANKRUPTCY COURT
          SOUTHERN DISTRICT OF FLORIDA
             West Palm Beach Division
```

**In re:**                                    **Case No.: 09-23426-BKC-PGH**
                                              **Chapter 7**
**Michael D. Murphy,**
     **Debtor.**
_____/

**ORDER OVERRULING TRUSTEE'S OBJECTION TO AMENDED EXEMPTIONS**

**THIS MATTER** came before the Court for trial on August 20, and October 6, 2010, upon Michael Bakst's ("Trustee") *Objection to Amended Exemptions and Application for Turnover* ("Objection").

**PROCEDURAL BACKGROUND**

Michael D. Murphy ("Debtor") filed for Chapter 7 relief on June 30, 2009. On his original schedules, the Debtor claimed three "pension funds" as exempt pursuant to Fla. Stat. § 222.21(2): 1) a Royal Bank of Scotland account in the amount of $20,643.00 ("RBS Account"); 2) a Legal & General account in the amount of $35,569.00 ("Legal General Account"); and 3) an Aegon/Scottish Equitable

account in the amount of $31,151.00 ("Scottish Equitable Account")(collectively, the "Accounts"). On February 2, 2010, the Debtor filed an amended Schedule "C". On March 4, 2010, the Trustee filed his Objection which argued that the Accounts, having been established in England, were ineligible for exemption. On April 15, 2010, the Trustee moved for summary judgment on his Objection.

Thereafter, on May 10, 2010, the Debtor filed a further amended Schedule "C" ("Second Amended Schedule 'C'"), wherein he claimed all three Accounts as exempt pursuant to both Fla. Stat. §§ 222.201 and 222.14. The RBS Account was listed as a "pension/annuity" with monthly income in the amount of 239.25,[1] the Legal General Account was listed as a "pension/annuity" with monthly income in the amount of 106.98, and the Scottish Equitable Account was listed as a "pension/annuity" with monthly income in the amount of 87.81. On May 10, 2010, the Debtor also filed a Cross-Motion for Summary Judgment and Opposition to Trustee's Motion for Summary Judgment which included Debtor's Declaration Under Penalty of Perjury. The Debtor had the assistance of counsel in filing his petition and was represented at his § 341 meeting and 2004 examination, however he has been proceeding *pro se* in this matter.

Upon review of the parties' motions for summary judgment, the Court concluded that it could not determine the Account exemption issue based on the documentation provided. The Court thereupon gave

---

[1] The Debtor did not indicate whether these amounts were denominated in U.S. dollars or British pounds.

-2-

the Debtor thirty days in which to file actual contracts for the accounts he claimed were exempt as annuities, and the actual plan or contract for the accounts he claimed were exempt as pension funds or similar accounts. The Debtor subsequently filed documents that seemed to be missing pages. The Court then entered a *Memorandum Order Granting in Part and Denying in Part Trustee's Motion for Summary Judgment; and Denying Debtor's Cross-motion for Summary Judgment* (the "Summary Judgment Order"), and set the matter for trial.

At trial on August 20, 2010, it became apparent that only 69 pages of the 290 pages of documents filed by the Debtor, in response to the Court's direction to file documents, had been scanned into the electronic case management docket for this case. This scanning error was rectified and the trial was continued to, and concluded on, October 6, 2010.

## FINDINGS OF FACT

The Debtor was the only witness to testify at trial. In addition to his live testimony, the Court heard the Trustee's audio recording of the Debtor's deposition testimony.[2] The Debtor stated that he is a United States citizen who worked and lived in England for many years. The Debtor has three children, ages 14, 16, and 19, who live in England. Pursuant to a United Kingdom court order, the Debtor is required to pay his ex-wife Sally Murphy, the mother of

---

[2]The Trustee filed a transcript of the Debtor's deposition testimony along with documents produced by the Debtor in response to the Trustee's 2004 Examination Duces Tecum.(D.E. #79).

his children, domestic support in the amount of £ 1500.00 per month. The Debtor stated that he is currently $36,966.00 in arrears on his domestic support obligations. The Debtor, who has remarried, lives with his current wife in Palm Beach County, Florida.

The Debtor also testified that he graduated from Duke University in 1982, and that he has worked in the financial services industry as a bond trader and consultant in many jobs in the United States and in England. The Debtor stated that since divorcing in 2005 and losing his job, he has been struggling to meet his domestic support obligations. The Debtor further stated that he has been adversely affected by the recession in the financial services industry and has been employed only intermittently despite his continued efforts to find employment. So far this year, the Debtor earned $11,768.00. The Debtor further testified that his current wife earns approximately $120,000.00 per year and that their monthly expenses total approximately $5,000.00.

As to the Accounts, the Debtor testified that he was denied access to the funds in the Accounts until he reached the early retirement age of 50, at which time he was permitted to withdraw 25% of the Account as a lump sum and to convert the balance to an annuity. The Debtor stated that the Legal General Account and the Scottish Equitable Account were both converted to annuities on June 26, 2009, and that the RBS Account was converted to an annuity after he filed for bankruptcy. The Scottish Equitable Account and the RBS Account appear to have originated as employee pension funds

in connection with the Debtor's employment at Daiwa Bank and NatWest Markets respectively. The Trustee did not contest the Debtor's representation in his Cross-Motion for Summary Judgment that the Legal General Account is a private investment plan that was marketed to the Debtor by a financial planner. *See* Cross-Motion at 8 n.5 (D.E. #100).

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(B).

### A.   *The Court's Summary Judgment Order*

In an effort to simplify and shorten the length of trial, the Court's Summary Judgment Order addressed several of the legal issues raised by the parties in their summary judgment motions. While making no determination as to the Debtor's claimed exemptions for the Scottish Equitable Account and the Legal General Account, the Summary Judgment Order determined that the RBS Account was ineligible for exemption as an annuity pursuant to Fla. Stat. § 222.14. This ruling was based upon the Debtor's admission that the RBS Account was converted to an annuity after the petition date. However, the Summary Judgment Order did not determine the Debtor's claim that the RBS Account was also exempt as a pension fund pursuant to 11 U.S.C. § 522(d)(10)(E), as incorporated into the scheme of exemptions available to Florida residents by virtue of Fla. Stat. § 222.201.

The Trustee maintains the Debtor's claimed exemptions for the Legal General Account and the Scottish Equitable Account fail because the Debtor did not produce actual annuity contracts for either account. The Trustee further argues that all three Accounts are ineligible for exemption as pension accounts because they do not meet the requirements of 11 U.S.C. § 522(d)(10)(E), and because the proceeds of the pensions are not reasonably necessary for the support of the Debtor and any dependent of the Debtor.

As discussed below, the Court finds that the Legal General Account and the Scottish Equitable Account payments are proceeds of annuity contracts that are exempt from the Debtor's bankruptcy estate pursuant to Fla. Stat. § 222.14. The Court also finds that the Debtor's right to receive payment from the RBS Account is exempt pursuant to 11 U.S.C. § 522(d)(10)(E) because it is a right to receive payment from a pension plan. The Court further finds that the exemption extends to the entire amount of the RBS Account payments because the payments are reasonably necessary for the support of the Debtor's dependents.

**B.   Annuity Exemption - Fla. Stat. § 222.14**

The Court's Summary Judgment Order reviewed the law concerning annuity exemptions under Fla. Stat. § 222.14.[3] Defining the term

---

[3]Fla. Stat. § 222.14 states:
The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of "annuity contracts" issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance

-6-

"annuity" broadly, the Florida Supreme Court stated in *McCollam* that "[s]ection 222.14 clearly exempts *all* annuity contracts from creditor claims". *LeCroy v. McCollam (In re McCollam)*, 612 So.2d 572, 574 (Fla. 1993)("had the legislature intended to limit the exemption to particular annuity contracts, it would have included such restrictive language when the statute was amended to include annuity contracts"). However, the Eleventh Circuit "read *McCollam* to require the existence of an actual annuity contract before a series of payments may be exempt under section 222.14." *Solomon v. Guardian Life Ins. Co. (In re Solomon)*, 95 F.3d 1076, 1078 (11th Cir. 1996)(finding that despite *McCollam's* broad interpretation of Florida's annuity exemption, annuities based upon structured settlements are not exempt under Fla. Stat. § 222.14). The Eleventh Circuit noted in *Solomon* that the statute did not shield from the claims of creditors all debts, accounts receivable or installment contracts structured to resemble annuities, and that to qualify as an annuity exemption under § 222.14, the parties to the agreement must have intended to create an annuity contract. *Id*. The Court finds that the documents included in the Debtor's Exhibits evidence both the intent to create an annuity contract and the existence of actual annuity contracts between the Debtor and Legal General, and between the Debtor and Scottish Equitable respectively.

---

policy or annuity contract was effected for the benefit of such creditor.

*1.    The Legal General Account*

The Legal General Exhibit "A" documents, among other things, include: the Debtor's 1994 application to open a Free Standing Additional Voluntary Contribution Scheme and Personal Pension Scheme with Legal and General; the Declaration of Trust for the Plan; the Deed amending provisions of the Legal and General Pensions Savings Plan; an April 1992 letter from the Pension Schemes Office of Inland Revenue[4] approving the Legal and General Personal Pension Scheme No 1 as a personal pension scheme for purposes of Chapter IV Part XIV of the Income and Corporation Taxes Act 1988; and a February 10, 1988 letter from the Superannuation Funds Office of Inland Revenue approving the Plan as a retirement benefits scheme for the purposes of Chapter II Part II of the Finance Act 1970. The Deed references several Inland Revenue rules, and indicates that the Plan was established as an irrevocable trust, extensively outlines the powers of the Trustee administrators, and sets forth the rules for the Plan's operation including, but not limited to, rules for loans, pension payments, death payments and limitations on contributions. Exhibit "A" also includes correspondence from Legal and General dated June 19, 2009 stating that the Debtor's pension income has been set up as

---

[4]Inland Revenue is a department of the British government concerned with tax collection. On April 18, 2005, Inland Revenue was merged into Her Majesty's Revenue and Customs, a department of the British government concerned with tax collection and payment of some forms of state support. *See* HM Revenue & Customs "About us" page, http://www.hmrc.gov.uk/menus/aboutmenu.htm.

requested, listing the Debtor's new pension "annuity" number, indicating that the Debtor's pension "annuity" started on June 12, 2009, and including payment details showing that the Debtor would receive annuity income in the amount of £ 855.84 per year. Based on the totality of the circumstances, the Court finds that the documents evidence the existence of an actual annuity contract between the Debtor and Legal and General, such that the payments at issue are the proceeds of an annuity contract qualifying for exemption pursuant to Fla. Stat. § 222.14. Although the statute requires that the proceeds of annuity contracts are "issued to citizens or residents of the state", it does not require that the issuing company be domiciled in the United States.

*2.   Scottish Equitable Account*

Debtor's Exhibit "B" contains documents related to the Scottish Equitable Account which, among other things, includes: a Scottish Equitable letter dated December 28, 2005 confirming that the Debtor's policy is a personal pension approved under Chapter IV Part XIV of the Income and Corporation Taxes Act 1988; a Scottish Equitable letter dated July 3, 2006 confirming that the Debtor's policy is a personal pension registered under Chapter 2 Part 4 of the Finance Act 2004 and advising that Scottish Equitable will be unable to provide a retirement quote because the Debtor had not reached the minimum retirement age of 50 years; an HM Revenue & Customs Registration Certificate dated June 16, 2005 showing the

Scottish Equitable personal pension scheme is registered; Scottish Equitable correspondence dated June 4, 2009 outlining the Debtor's pension options and including a pension benefit summary showing the Debtor's retirement date as June 3, 2009 and referencing an enclosed Key Features Document; the Debtor's signed application dated June 12, 2009 indicating his election to receive a 25% lump sum payment with the pension balance to be paid at the rate of £ 722.28 annually; a Scottish Equitable statement of retirement rights confirming the Debtor's retirement date of June 25, 2009 and showing that the pension of £ 702.48 will be paid monthly for the lifetime of the policyholder or the end of five years if longer; and a Scottish Equitable letter dated June 26, 2009 noting that the Debtor will be asked to complete Annuity certificates at regular intervals. The Key Features Document enclosed with the June 4, 2009 correspondence is titled "Key Features of the Guaranteed Pension Annuity" which states: the aim of the annuity product is to provide guaranteed retirement to last the holder's lifetime, the risk factors of the policy, the policy holder's rights, the applicable law, and the answers to frequently asked questions. The Court finds that the totality of these documents evidence the existence of an actual annuity contract between the Debtor and Scottish Equitable, such that the payments at issue are the proceeds of an annuity contract qualifying for exemption pursuant to Fla. Stat. § 222.14.

### C. Pension Fund Exemption - 11 U.S.C. § 522(d)(10)(E)

Although the RBS Account is ineligible for exemption as an annuity,[5] the Court must still determine the Debtor's claim that it is exempt as a pension fund or similar account on account of illness, disability, death, age, or length of service pursuant to § 522(d)(10)(E)[6] which provides an exemption for:

> The debtor's right to receive--
> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless--
>  (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>  (ii) such payment is on account of age or length of service; and
>  (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

The Court's Summary Judgment Order addressed many of the legal arguments raised by the parties. In the Summary Judgment Order, the

---

[5] Having determined that the Legal General Account and the Scottish Equitable Account are exempt annuities under Florida law, the Court need not reach the Debtor's claim that these accounts are also exempt pension funds. Notwithstanding, the Court would conclude that these accounts possess the attributes of pension funds or similar plans or contracts and are exempt pursuant to § 522(d)(10)(E).

[6] Even though the State of Florida opted out of the federal scheme of exemptions, Fla. Stat. § 222.201 permits an individual debtor to exempt property listed in 11 U.S.C. § 522(d) in addition to any other exemptions allowed under state law.

-11-

Court read *In re Ondrey*, 227 B.R. 211 (Bankr. W.D.N.Y. 1998)[7], and *Rousey v. Jacoway*, 125 S.Ct. 1561 (2005)[8] together to determine that foreign pension funds or similar plans or contracts on account of illness, disability, death, age, or length of service need not *always* be ineligible for exemption pursuant to § 522(d)(10)(E). *See Summary Judgment Order* (extensively setting forth the Court's legal reasoning)(D.E. #122). In the Summary Judgment Order, the Court also rejected the Trustee's argument that § 522(d)(10)(E)'s exclusions rendered the subject Accounts ineligible for exemption. The Court noted that although it was undisputed that the payments were on account of age or length of service and that the Accounts did not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986 ("IRC"), the Accounts had *not* been set up by or under the auspices of an insider that employed the Debtor. According, not all of § 522(d)(10)(E)'s exclusionary conditions were present to render the Accounts ineligible for exemption.

The Summary Judgment Order quoted *Rousey's* definition of a pension plan as "'a fixed sum ... paid under given conditions to a person following his retirement from service (as due to age or

---

[7] The *Ondrey* court determined that a Canadian pension plan qualified for exemption under New York law, but that a Canadian registered retirement savings plan did not qualify for exemption. 227 B.R. 211.

[8] In *Rousey,* the Supreme Court examined the attributes of stock bonus, pension, profit sharing, and annuity plans or contracts to determine that individual retirement accounts are similar plans or contracts that are exempt within the meaning of § 522(d)(10)(E). In so doing, the Court resolved a split among the Circuits. 125 S.Ct. 1561.

disability) or to the surviving dependents of a person entitled to such a pension.'" *Id.* at 1568-69(*citing* Webster's 3d 1671). Relying on *Rousey*, the Summary Judgment Order stated that:

> Pension fund characteristics include that they are established and contributed to by employers, they provide deferred payment, and they provide retirement income. To the extent that the Debtor seeks exemption for an alleged pension fund, the contract or plan must at least possess such characteristics."

*Summary Judgment Order* at 15-16.

The Summary Judgment Order also provided that:

> To the extent that any of the retirement accounts were set up by the Debtor, rather than a non-insider employer, to be eligible for exemption they must contain restrictive features similar to an IRA. A nonexhaustive list of such features would provide, for example, that payments are on account of age, that the funds were held in a custodial account, and that there are substantial penalties preventing the Debtor's unfettered access to the funds at any time."

*Id.* at 16.

The Trustee has not disputed the Debtor's representation that the RBS Account was set up under the auspices NatWest Markets, with whom the Debtor was at one time employed. Debtor's Exhibit "C" RBS documents include a Definitive Trust Deed of the Royal Bank of Scotland Group Pension Fund dated January 25,2005, which sets forth, *inter alia*, the powers of the Trustees who administer the pension plan, the limits on maximum benefits in conjunction with the plan's approval by Inland Revenue as an exempt approved scheme under Chapter I of Part XIV of the Taxes Act, the composition of fund assets, provisions for employer and member contributions, actuarial valuations, eligibility for membership, benefits on account of age, incapacity or ill health, and nonassignability.

-13-

Attached to the Definitive Trust Deed is a document titled "Schedule 8 Former Members of Natwest Markets Pension Fund" which provides, *inter alia,* formula for calculating benefits at retirement age of 60 years, benefits on or after attainment of age 50 with qualifying service, death benefits, and spouse and children's benefits. In addition, Debtor's Exhibit "C" also includes: a letter from RBS Group Pension Services dated March 2, 2010 referencing a benefit choice and payment instruction form and including a Retirement Benefits Quotation for the Debtor's RBS Account; a letter from RBS Group Pension Services acknowledging RBS's receipt of the Debtor's benefit choice form confirming that a lump sum would be paid to the Debtor on April 7, 2010 and that the Debtor's pension had been set up with the first payment to be made April 18, 2010; and a Retirement Benefits Statement from the Royal Bank of Scotland Group Pension Fund indicating that the Debtor's pension would be payable at the rate of £ 1924.00 per year. The Definitive Trust Deed, Schedule 8, and the RBS correspondence evidence that the RBS Account is a pension plan which provides "'a fixed sum ... paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension.'" 125 S. Ct. at 1568-69. As such, the payments are within the definition of a pension plan as set forth in *Rousey.* In addition, the Definitive Trust Deed indicates that the fund was established by NatWest Markets who at one time employed the Debtor.

-14-

Although the record is unclear as to whether contributions were made by the employer, the Definitive Deed of Trust provides for employer contributions. The pension fund provides deferred payment and retirement income. Thus, the Court finds that the RBS Account is a pension fund within the meaning of § 522(d)(10)(E) and it is eligible for exemption.

The Court notes that the exemption under § 522(d)(10)(E) extends only to the amount reasonably necessary for the support of the debtor and any dependent of the debtor. *See* § 522(d)(10)(E). At trial, the Debtor testified that he has been employed intermittently and that he earned only $11,768.00 so far this year. The Debtor further testified that he is obligated to pay £ 1500.00 per month in support to his ex-wife, and that he is in arrears on this obligation in the amount of $36,966.00. The Trustee, noting that the Debtor's current wife earns a substantial salary, argued that the RBS Account is not reasonably necessary for the support of the Debtor and any dependent of the Debtor. The Court does not agree. The Debtor's domestic support obligation is the Debtor's alone. It is not an obligation of the Debtor's current wife. Based on the Debtor's court-ordered domestic support obligation, the arrearages thereon, the Debtor's limited income to date and his intermittent employment, the Court finds that the entire amount of the RBS Account is reasonably necessary for the support of the dependents of the Debtor.

## CONCLUSION

Based upon the Court's analysis set forth in the Summary Judgment Order and for the reasons stated above, the Court overrules the Trustee's Objection. The Court finds that the Legal General Account and the Scottish Equitable Account are exempt as the proceeds of annuity contracts pursuant to Fla. Stat. § 222.14. The Court also finds that the RBS Account is exempt in its entirety as the right to receive payment under a pension fund pursuant to 11 U.S.C. § 522(d)(10)(E), and that all payments from the RBS Account are reasonably necessary for the support of the dependents of the Debtor.

## ORDER

The Court, having heard the testimony of the witness, the arguments of the parties, having reviewed the documentary evidence, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Trustee's Objection to Amended Exemptions is **OVERRULED**.

2. The Legal General Account and the Scottish Equitable Account are exempt as the proceeds of annuity contracts pursuant to Fla. Stat. § 222.14.

3. The RBS Account is exempt in its entirety as the right to receive payment under a pension fund pursuant to 11 U.S.C. § 522(d)(10)(E), and all payments from the RBS Account are reasonably necessary for the support of the dependents of the Debtor.

# # #

Copies furnished to:
Michael Bakst, Trustee

Michael D. Murphy
927 North Golf View Road
Lake Worth, FL 33460